ever denied or rebutted that Mr. Myczek was not performing. But what did the three witnesses say? Well, that's a good question, because you have Arbitrator Cain. Malecki changed her testimony four times, I believe, on when she first became... Who were you in the Commission's decision, not the arbitrator? The Commission found that those witnesses were credible, correct? Correct. Well, where does that leave you? Well, where it leaves me is that I believe that, first off, on the specific accident date, he did testify to that date. All of their records. Again, this becomes an issue of what's the date. And that's what's... I understand your point. He testified to it, okay? They could have believed him. But you've got the doctor's records. Don't mention any specific date. Right. But the very first... I understand that. But I've seen multiple decisions from this Court where they address the fact, and just recently, by Your Honor, Justice Hudson, that the records aren't all as complete in this matter. And that's the accolade decision. Look, no one is suggesting that if the Commission decided the other way, that they couldn't have decided the other way. They just didn't. This is manifest weight. There's no right answer. When you have manifest weight, the decision could go in either direction. It's the deference we owe to the direction they pick that makes it such a burden. In your particular case, you tried this on a repetitive trial theory. Did you not? I did. Do you know a single case where there was only one single incident that established repetitive trauma? I don't. Well, this gets, again, from a repetitive... I can't cite you one off the top of my head, Your Honor. But again, what's at issue in this case, especially with the last, with the second application that was filed, I argue as a matter of law, the Commission was wrong. They didn't look at the decision. They denied benefits under international harvester. They didn't even apply the facts or evidence under Bellwood. They denied it under international harvester. How do we affirm the decision on any basis in the record if we find, you know, the theory was wrong? Couldn't we still uphold the decision? I mean, even if we conceded you were correct, which I'm not saying, Your Honor, under either, you know, you have a point about that, but you still have to have a manifestation. And that brings us to the other point about, as Justice Hoffman alluded to, repetitive trauma. He removes the bundles from the palletizer, has this injury. Where is the activity documented in the record that would give rise to repetitive trauma theory of recovery? Where is it? Well, that's what's interesting in this case. Respondent itself argues that on the specific date that it should be denied because petitioner testified and there's no records that indicate there was repetitive use of the arms at work. There is no denial. That's not the only reason. That's not the only reason. He spoke to the vocational rehabilitation counselor and specifically stated he could not fix a specific incident as causing his condition. That's number one. Number two, he had inconsistent medical histories. So on that basis, the commission threw out your acute injury theory. Now we go to the repetitive trauma theory, and the only thing that you can point to is a single incident. You cannot point to a series of events that leads to this condition that merely manifests itself on date. And that's really the problem they had with it. Well, I would submit that the repetitive theory, and again, this is what Dr. Iptekar somewhat addresses, is that what was this gentleman doing on May 28th? He was forcefully removing 20 single 75-pound bundles of shingles. That was his testimony. He wasn't going to lie. He couldn't remember one specific incident of pulling out 75-pound bundles of shingles. But it was repetitive because he had to pull out 20 75-pound bundles of shingles forcefully with his elbow, with his arms, and injured his elbow. That's an acute injury. That's not repetitive. Excuse me. That's an acute injury. That's not repetitive trauma. Repetitive trauma is I do this every day, every day, every day, every day, every day, for one month, two months, three months, four months, and all of a sudden I've got carpal tunnel. And why do I have carpal tunnel? Not because I went like this on one day. It's because I did that for six months. And that's repetitive trauma. The best you gave them was I pulled out one stack of bundles. There's nothing repetitive about that. That's an acute injury case. And they blew you out on acute injury because your own guy said I can't identify my injury to a specific event. And you also have a notice problem, a serious notice problem. They found your respondent's witnesses credible on the issue of notice and found your guy not credible. Well, and I would again submit that that finding in and of itself is against the manifest weight. I mean, it's incredible to me that you have three witnesses who testify that they never had a conversation with them, never had any idea that this injury occurred, but yet they all met on cross-examination that they sent him the short-term disability form right away, their own vocational consultant that they hired who met with him at his house through their case nurse. Every single short-term form in this case is from Owens Corning. It is not from Aetna. The employer sent him the form. It documents on every single form he put that his injury was a result of his work. Every single short-term form. He testified that he called in two days after. You have the production, his boss saying, yes, they have a call-in system. He testified he left a message on the system. The production foreman says we have a system, but I don't know who the production foreman is that gets that. The main guy testifies that we don't even have a call-in system. So, but ‑‑ You realize that argument only applies legally to effective notice. Correct. The finding of no notice is never reached, do you understand? Correct. But, again, with respect to whether or not this accident occurred, no one denied that it didn't happen to him. They all testified that they knew as of June, the exact same month after, that he was off of work due to an injury to his arms. They all agreed to that. All right, well, this is on the notice issue, I understand, but it doesn't really save your theory on the repetitive trauma or acute trauma, does it? That's a separate issue. Well, again, I would argue that ‑‑ As soon as you got over that hurdle. Right. And I would argue that the decision is against the manifest way, and I would agree with you. Are these records inconsistent? Yes, but they're not incomplete. They're incomplete, is what they really are, is what I've indicated in the brief. His very first exam on June 6th, when he sees his doctor, says he was at work, left with a heavy object, next day had pain. The report from June 16th from Dr. Seymour, developed elbow pain after repetitive heavy use of arms at work. June 21st, when he goes to therapy, is less than a month after the alleged accident. It says pulling and throwing shingles out of a jam machine while at work three to four weeks ago with both arms. So that's really what the commission, to me, is, and I understand Your Honor's position on this with manifest way, and I agree it's a substantial burden to overcome. But, again, I've seen cases decided, and I'm not aware of any case law that ‑‑ what are we interpreting here? This definite time that from now on, every single claimant has to have a medical record where it specifically says this? That's even the Respondent's own document, when they sent him for the FCE just a few months after that. This bill is going to Josephine Malecki. That's who sent them the form. Who first testified she didn't know that anything was work‑related for two years after the alleged May 28th date, but yet she sends them a form with May 28th as the accident date. How did ‑‑ if they didn't know, how could she put that date on there? And to send me the bill? How do you explain this? This is critical. He tells, well, the local expert, he didn't have a specific date on a specific ‑‑ How do you overcome that? That's your client's testifying schedule. What he testifies, he couldn't remember a definitive time. What he meant, and, again, I wasn't at that meeting. This was years before I ever got involved when he had met with ‑‑ they set all this up on their own as part of this short‑term program. He met with them. He said, I couldn't ‑‑ I can't recall a specific incident meeting. And this gets to the, you know, is it one thing to point out bundles of shingles, or is it that cumulative effect? That's what Dr. Iftikhar was questioning about at his deposition, and he described the whole thing as an episode of trauma. It was that start from A to Z, that whole thing of him removing those bundles. That's what I submit Mr. Mycheck meant when he told the vocational counselor that, that I can't recall one specific incident, but he says it happened at work. Everybody admits that it happened at work. So you're saying it's sufficient that, and back to Justice Hoffman's idea, your comment about repetitive versus acute trauma, okay? So you're saying that the acute trauma happened on that date. Correct. But the mechanism of that acute trauma could have been the last bundle or the middle bundle he was pulling, but it's all of the bundles on that date that he was pulling off the rat or whatever, right? Correct. And the June 16th date was just used as a manifestation date because that's when he gets his first diagnosis from the doctor of what his actual condition is. He didn't, that was his last day. He worked with him for approximately seven months. May 28th was his last day of work. Everybody agrees on that. So here's what I'm struggling with. To rule in the claimant's favor, I think in essence we would have to substitute our judgment for that of the commission because you've tacitly acknowledged contradictions and inconsistencies between the medical records, the client's testimony, and the other testimony. So how do we exalt that and say the commission was wrong and give that more credence? Because I think the record, I don't believe that the records are inconsistent as much as that they're incomplete. He testified that he never received treatment and never had injuries to his elbows prior to May 28th of 2005. Respondent did not rebut that testimony at all. Where did Dr. Seymour get the notion that this man told him that it happened two months prior to him seeing him on June 16th, 2005? Where did he get that idea from? That I can't answer for you, Your Honor. But it is in the medical record. Correct? It is in the medical record. It is in the record that it started approximately as I submitted. I think that that's an error because that's contrary to what Mr. Majchek testified to. Again, I won't discuss anything I tried to do outside of evidence, and I can't answer that for you. His short-term disability forms indicate that his injury was not the result of an accident. That gets into the issue of whether, but it says that they're work-related. That got into the issue of what he thought was and wasn't an accident. I think it reads, quote, not the result of an accident, close quote. I think that's exactly what's in there. I mean, these are the things that the commission looked at, and they said we don't buy his story. Did anyone actually see him get injured when he pulled that bundle out of the machine? He was one of the few people. They were working a skeletal crew because it was May 28th, and they were closed. They were on basically short-term for the Memorial Day holiday. And when did he go to medical, seek medical opinion? Well, he testified he called in the following two days, so he called in the 29th and 30th of May. The 31st was Memorial Day. He got a hold of the doctor the following day and got in on June 6th. And that's when he gives the history that he was at work and lifted a heavy object. He had bilateral pain in both elbows, and when he woke up the next day, he was in a lot of pain. That's the first medical treatment, and they both agree 5-28 was the last day he worked. So my position in this case is that the records, you know, it gets to this issue of are they inconsistent? Are they really incomplete? Because I agree with the court. He gives an incomplete history of what happened. But everything he tells the doctors are that he was at work and he lifted these heavy objects. And to me, the therapy note in and of itself is very big in this case because it's less than a month after the accident. It actually even describes him pulling and throwing the shingles out of the jammed machine at work. He tells them that. He tells everybody that he got hurt at work. Okay. Thank you, Counselor. Thank you. We will have time after the clock. May it please the Court, my name is Brian McCarty. I'm here on behalf of Lawrence Corning. As Counsel has indicated, obviously, there are two claims. Essentially what I think that Mr. Micek is trying to do in this, excuse me, in this circumstance is take two bites out of the apple. Either it's a repetitive trauma theory or it's a specific inciting event. Let's go with that acute specific. Sure. You'd probably waste your time on form. I could. So relative to, I'm sorry, do you have a question? No, I want you to address it. So relative to the specific incident date, so obviously he claims that this accident happened on May 28th of 2005. But when you look at the medical records, Counsel is indicating that they're incomplete. But they are by their very nature inconsistent. So he's claiming that something specific happened on that date. Okay. So he goes to. Didn't the insurer for your company say that? I'm sorry? Isn't there some document that says that's the date of the accident from the insurer of your company? I don't know if it's on the FMLA form or not. But certainly that's what he claims on the application for adjustment of claim. But as was discussed with Counsel, there's no specific witnesses. It's just what he's testifying to. So if you go to the first record, the first record from Dr. Levy on June 6th. He merely states that he lifted a heavy object at work. He doesn't state a date. He doesn't state a specific time. He just says I was at work and I was lifting something and I got hurt. So then the very next visit that he goes to, he changes that to repetitive trauma theory when he goes to see Dr. Seymour on June 16th of 2005. So he's already changed his story from specific accident to repetitive trauma. And that's within the first two visits. What does he say? Obviously he's not trained in the workers' compact. So he didn't change his story. Mr. Mycheck? Yes. Understandably, I presume he's not fully versed in the law, as all of you and hopefully all of us are. But relative to ñ that's when he starts claiming that something happened two months ago. Well, now, is it a repetitive issue from two months ago? Is it a specific incident from two months ago? That's obviously not clear. So kind of like I was saying, he's going from a specific incident to now repetitive trauma. In any case, if it was a specific incident, it certainly wasn't May the 28th. Well, certainly not. On June the 16th, it was two months ago. Correct. So, I mean, he's already changing the story from the specific date of May 28th now to something that happened two months ago. So then, excuse me, so then he goes to ñ and then he starts claiming repetitive heavy use of the arms. So now we're not even ñ we're not even to a specific I was lifting up ñ I was lifting something heavy. Now I'm talking repetitive heavy use. Yeah, but somebody asked you a question before. Is it necessarily impossible that a person can suffer a repetitive injury and then on a specific day do something that just blows it right out of the water? I mean, it just makes it terrible. I certainly think it's possible. I mean, it can happen. Absolutely. Absolutely. There's certainly no evidence in the record that it happened to this particular individual. But it is certainly possible. Along that line, what did he say about heavy lifting? Are you inferring that's over time or did he say over time? I don't think he states anything specific. Well, isn't it as much a reasonable inference to say heavy lifting on the day of May 28th? He's doing 20 bundles. Sure. It's reasonable. However, that story changes depending on which doctor he sees next. I mean, essentially, when counsel says that the medical records are incomplete, they're inconsistent by their very nature. So the fact that he's saying that they're inconsistent is ñ He's saying incomplete. He is saying incomplete. I'm sorry. But I'm saying that they're inconsistent. I suppose the real question, really, and just to get to the crux of it. Sure. There may very well be evidence in the record that could support a finding for the claimant. Now, why don't you just tell us what evidence in the record supports the finding the commission made? Certainly the medical evidence. Certainly from the standpoint of the various doctors' opinions. Certainly the commission relies on the fact that the medical records are incomplete and notes specifically the June 6th, 2005 record from Dr. Levy, the June 16th, 2005 record from Dr. Seymour, the fact that the FMLA paperwork that was prepared by Dr. Seymour and Mr. Mycheck indicated a potential date of accident of April or May or 04 slash 05. And additionally, Dr. Ifkar, when he testified on deposition, specifically indicated that the record of ñ in the history in the record of March 28th of 2006, it did not contain any history of a repetitive trauma injury. So essentially that's what the commission relies upon. And certainly from the manifest weight standard, there's sufficient evidence in the record for the commission to find that Mr. Mycheck did not prove either accident. Well, really, the real question is, is that sufficient evidence in the record for us to come to the conclusion that an opposite result is not clearly apparent? It is sufficient. It is, yes. Water? You said something about medical. Are we talking about the mechanism of injury, that there's a dispute about that? I mean, certainly one can infer that there is a dispute relative to the specific mechanism of injury. You can simply look at the fact that he filed two applications for adjustment of claim, one on the basis of a specific event and one on the basis of a repetitive trauma injury. So how do you kind of break those two apart? Essentially, kind of what I indicated initially, he's trying to take two bites out of the apple. And based upon what the commission ruled, he wasn't able to prove either one by a preponderance of the evidence. And based upon the manifest weight standard, the commission ruled that he did not prove that he sustained an accident arising out of and in the course of his employment. And as such, I would ask that this Court affirm that decision. Thank you, Your Honor. Thank you, Counsel. Just real briefly, Your Honor, with respect to Dr. Seymour's notes and the completion of the short-term disability paperwork, it specifically does state on that application by Mr. Majchek that his injury and illness was a result of his employment. That's specifically what it states on that form. And with response to the recent inquiries regarding the commission's decision in this case, the commission's decision specifically states in the appendix at page 46, this record contains no definite time of petitioner symptoms or onset of the symptoms, therefore fails to support his alleged accident date. Again, we're getting this issue of time. That's what I'm at issue with in this case, because to me what the commission has held here is that they are saying that his testimony, no one, I still don't understand how Respondent argues that he didn't testify to an incident. He did. He testified what happened on May 28th. That's the time. There's decisions that are actually going to be proven by petitioner's testimony alone. You then look at the medical evidence. Do they have to believe him? Do they have to? Does the commission have to believe him? They don't have to believe him, but the commission denied accident. They denied accident because they said that he testified that this happened on May 28th, but that the records don't give a definite time. That's why they denied accident. Wait a minute. Dr. Seward's record says he told him it happened two months before June 16th. Right. That's contradicting to what happened on May 28th. Right. And as I would allude to earlier to your earlier question, Justice Hoffman, is that I can't account for that. To me that's an error on part of the doctor. The doctor also put, as counsel just said, Why is it an error on part of the doctor? Excuse me. Slow down. Why is it an error on part of the doctor if your client told him that? It doesn't say that. I would submit that it doesn't say that the client told him that. Excuse me. Should we assume he picked it out of the air and made it up? I don't know what the court should assume because Dr. Seward also says that the symptoms begin no 4. He wasn't for the employer. He wasn't even working for Owens Point. You acknowledge specifically what the records say, but now you're trying to give your explanation of why maybe it says that. Is that evidence? Is your explanation? No, that's what I'm saying. I'm not arguing that. I can't explain why Dr. Seward put that, so I agree. So to try to summarize this broadly, what you're saying is that there seems to be a concession or admission or at least for sure a reasonable inference that this happened at work. Now, the question is, was it over time at work, two months earlier? There's some inconsistency in the reporting. Correct. Or is it taking down of what allegedly he said, or was it on May 28th, right? Correct. But you're saying that there's no issue about the fact this injury occurred at work. I would submit that that's absolutely correct. That respondent does not deny. There was no rebuttal evidence that he wasn't performing work activities and sustained an injury to his elbows. This whole thing falls upon this accident date. Okay, but then you're saying that the commission even said this happened at work? I'm saying the commission said that the records don't say a definite time. Right. That's why they denied it, because there's not a specific date. And he puts because it says happened at work. That's the first one. June 6th, he was at work with the heavy object. Next day, had pain. Because it doesn't say May 28th, he's not entitled to benefits. As a matter of public policy, that's where this is going. Did the commission say we find that he established there's an accident, but there's some confusion over the date? Did they say that? No. They said that he didn't prove it because there's no definite time that his testimony conflicts with the medical evidence because the records don't have the date. Let's cut to the chase. Would you acknowledge they really didn't believe on his testimony? That's the real crux of the entire problem that you have. And they don't have to believe him. They found he was all over the board with regard to when this happened and what caused the injury. So they didn't believe him. Well, I would submit that they found that he was working and they agreed he was working. And they agreed that May 28th was his last day of work. So does that mean he got hurt at work when no one saw it other than him? Do they have to believe him? They don't have to believe him. But that's not, but they didn't, the commission didn't enter a decision. We deny benefits because we don't believe Petitioner. It says we deny benefits because he testified he got hurt on May 28th and the records don't give a specific time of his accident. That's why benefits were denied. Benefits were denied because he failed to prove that he sustained an accidental injury in the course, rising out of it in the course of his employment. It's a failure of proof case. It's not a didn't happen case. It's a failure of proof case. He didn't introduce sufficient, he didn't introduce non-contradictory, non-contradicted evidence that, number one, was the result of an acute injury, number one, because there is Dr. Seymour's records that it happened two months before. You saw him on June the 16th. And he didn't introduce evidence of a repetitive trauma because the only thing anyone testified to is it happened on one day. And so what have you got? There's no question he filed both ways. And your opponent is right. He wanted to have it one way or the other. Either it's an acute injury or it's repetitive trauma. The problem is when it came down to the proofs, he didn't prove either. That's what the commission found, at least the way I read it. Thank you, Your Honor. Thank you, counsel. Thank you, counsel, both, for your arguments. This matter has been taken under advisement. A written disposition shall issue.